**Aloysius MEYER, Plaintiff,**

v.

**NOBLE DRILLING, INCORPORATED, Defendant.**

Civ. No. 578.

United States District Court
D. Montana,
Billings Division.

Oct. 6, 1966.

Gene Huntley, Baker, Mont., for plaintiff.

Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for defendant.

## MEMORANDUM OPINION

JAMESON, Chief Judge.

This is an action for personal injuries sustained by plaintiff on December 13, 1965, near Buffalo, South Dakota. Plaintiff was employed by defendant as a "rough neck" or general oil field laborer. He alleges that the injuries resulted from negligent acts of the defendant, his employer.

Defendant has moved for summary judgment on the grounds (1) that the action is barred by the terms of the Workmen's Compensation Act of Montana; and (2) that if the Montana Act is inapplicable, the action is barred by the terms of the Workmen's Compensation Act of South Dakota. The motion is based on the pleadings, deposition of plaintiff, depositions of employees and former employees of the defendant, and two affidavits. Briefs have been filed by both parties.

A pretrial conference was held on August 17, 1966. The parties agreed that there is no genuine issue of any material fact with respect to the questions raised by the defendant's motion for summary judgment.

At the time of the accident plaintiff had been living in Baker, Montana, for approximately two years.[1] While he had worked for the defendant, Noble Drilling, Inc. previously, his employment at the time of the accident had started on November 25, 1965. He was hired in Baker

---

1. While counsel recites in his brief that "plaintiff claims to be a resident of Hebron, North Dakota", the complaint alleges that he is a "citizen of Montana", and it appears from his deposition that his home had been in Baker for two years; that prior thereto he lived in Gillette, Wyoming, for over five years; and that he had not lived in Hebron, North Dakota, for eight years.

by Eugene Shell, a driller for the defendant, and was informed that the employment would be in South Dakota. All of the crew, with one exception, lived in Baker, and traveled daily from their homes at Baker to the well site in South Dakota, a distance of approximately 94 miles. They were not paid for traveling time. There were two other crews—one headquartered in Baker, Montana, and the other in Belfield, North Dakota. Both of these crews also traveled daily from their homes to the well site.

The defendant corporation, an oil well drilling contractor with headquarters at Tulsa, Oklahoma, is engaged in drilling oil wells in various parts of the United States. It had been drilling wells for a number of years in the States of Montana and North Dakota and drilled four holes in South Dakota during 1965. The tool pusher, in charge of the drilling in South Dakota, was a Baker resident and received his orders from a drilling superintendent in Casper, Wyoming. The crew members were paid from the Tulsa, Oklahoma, office by checks drawn on Oklahoma banks.

The drilling rig upon which plaintiff was injured had been in use in South Dakota for approximately four months. Plaintiff had been working for a little more than two weeks when he was injured. After the accident he was brought to Baker, Montana, for medical treatment and was hospitalized in Baker.

It is undisputed that the defendant had qualified under and elected to be bound by the Workmen's Compensation Act of Montana. It has been qualified under Plan Two of the Montana Act since June 23, 1941.

Defendant carried a Workmen's Compensation policy with the Aetna Casualty and Surety Company. Coverage A of the policy recites that "this policy applies to the Workmen's Compensation law * * * of each of the following states: * * * MONTANA * * * SOUTH DAKOTA * * *." The policy contains an "all states endorsement", extending coverage to all states except Nevada, North Dakota, Ohio, Oregon, Washington, West Virginia or Wyoming.

This policy was in effect at all times between November 27, 1965, and December 13, 1965. It had been filed prior thereto with the Industrial Accident Board of the State of Montana, but had not been filed with the Industrial Commissioner of the State of South Dakota [2] pursuant to the provisions of SDC 64.-0506.[3]

As noted supra, the accident occurred on December 13, 1965. This action was filed on January 11, 1966. Plaintiff has not filed a claim for compensation under either the South Dakota Act or the Montana Act. Under either act, the claim is barred unless filed within one year from the date of the accident (SDC 64.0611; R.C.M.1947, § 92–601).[4]

2. On December 22, 1965, counsel for plaintiff wrote the insurance commissioner of South Dakota to ascertain whether Noble Drilling Company was qualified under the Workmen's Compensation Act of South Dakota. The insurance commissioner replied on December 29 that no employer's first report of injury and no certificate of insurance had been filed and that under these circumstances "this commission would not have jurisdiction over the matter". The evidence before the court does not indicate whether or not a report of injury and certificate of insurance were filed subsequent to that date.

3. Section 64.0506 of the South Dakota Code provides:

"Whenever any insurance company operating under this chapter shall issue a policy of workmen's compensation insurance to any employer, the company writing such insurance shall file a certificate thereof with the Industrial Commissioner."

4. Aside from the correspondence between plaintiff's counsel and the office of the South Dakota Insurance Commissioner, no attempt was made to have the question of coverage under the South Dakota Act determined by the insurance commissioner or courts of South Dakota. Since this court does not have the benefit of a ruling by the South Dakota court, it is necessary to determine whether plaintiff is barred by the Workmen's Compensation Act of South Dakota, and such determination should be made before time for filing a claim has expired.

Defendant contends that the procurement of the insurance policy was sufficient to qualify defendant under the Workmen's Compensation Act of South Dakota. Plaintiff contends that defendant was not qualified because proof of the insurance coverage had not been filed with the Industiral Commissioner of that state.

The provisions of the South Dakota Workmen's Compensation Act are found in Title 64 of the South Dakota Code. Chapter 64.01 relates to the "Scope and Effect of Law". SDC 64.0105 provides in pertinent part:

> "Every employer and employee shall be presumed to have accepted the provisions of this title, and shall be thereby bound,[5] whether injury by accident * ·· * occurs within this state or elsewhere, except: * * * 2. No employer other than the state, a municipality, or other political subdivision of this state shall be deemed to have accepted the provisions of this title unless he has complied with the provisions of section 64.0106. * * *."

SDC 64.0106 provides:

> "Except as otherwise provided in this section, every employer, coming within the compensation provisions of this title, shall secure the payment of compensation to his employees in one of the following ways and while the payment of compensation is so secured, the employer shall be liable to any employee for injury * * * arising out of and in the course of the employment only as specified by this title: (1) By insuring and keeping insured the payment of such compensation with any stock corporation writing workmen's compensation insurance * * *."

> "Any employer other than the state * * * who has failed to comply with

the provisions of this section shall be deemed to have elected not to operate under the provisions of this title".

It will be noted that under SDC 64.0105 and 64.0106 no employer shall be deemed to have accepted the provisions of the act unless he has complied with the provisions of "section 64.0106", and his failure to comply therewith shall be deemed an election not to operate under the act. No reference is made in either section to section 64.0506 (note 3), which appears in Chapter 64.05 relating to "Administration of Law".

■ It is undisputed that defendant had procured an insurance policy in compliance with SDC 64.0106 and that this policy was in effect on the date of the accident. It is likewise undisputed that the insurer had failed to file a certificate with the Industrial Commissioner as required by SDC 64.0506. May the defendant employer be deemed not "to have accepted the provisions" of the Act or be "deemed to have elected not to operate under" the Act because of the *insurer's* failure to file the required certificate?

While there is no case precisely in point, this question is answered inferentially by the leading case of Richardson v. Farmers' Co-operative Union, 1922, 45 S.D. 357, 187 N.W. 632. In that case the question presented was whether the failure of the employer to carry the insurance required by sections 9439 and 9482 of the 1919 South Dakota Code (now 64.0106) amounted to an election on the part of the employer not to operate under the Act. It was contended that the only method open to an employer to so elect was the notice procedure of section 9438 (now 64.0105), and the exclusion rule of 9440 (now 64.0104). The court concluded that the non-procurement of insurance, without the notice require-

---

5. If defendant has qualified under the South Dakota Act, it is clear that plaintiff is bound thereby. SDC 64.0104 provides:

> "The rights and remedies herein granted to an employee subject to this title, on account of personal injury * * * by accident arising out of and in the

course of employment, shall exclude all other rights and remedies of such employee, * * * on account of such injury * * *."

See also Freese v. John Morrell & Co., 1931, 58 S.D. 634, 237 N.W. 886, 888, and cases there cited.

ments, was sufficient to make the election.

In so ruling, the court analyzed the provisions of the Workmen's Compensation Act at length, with particular reference to which sections were applicable in determining whether the employer was in fact insured. The court states:

"The original act was * * * divided into five parts: Part 1 included present sections 9436–9454, inclusive, and was labeled 'Rights and Remedies'; * * * part 3, 'Administration,' present sections 9464–9481; part 4, 'Insurance,' present sections 9482–9489; * * *. The original section 9482 was section 46, * * *. As will be observed, the Code Commission substituted 'sections 9436 to 9454 inclusive' for 'part one of this act.' Under either reading it cannot be successfully claimed that the Legislature intended part 2, 'Compensation Schedule' (sections 9455–9463), to be the measure of the employer's liability where he has neglected to carry insurance, or that part 3, 'Administration,' should apply, otherwise the language 'part one' in the original act and the language 'sections 9436–9454, inclusive,' in the Revised Code, would not have been placed in the above section. * * *. *We can therefore only infer that the Legislature intended that the liability of the noninsuring employer should be measured by those sections included within the numbers 9436 to 9454, inclusive, which should be appropriate to the situation, and that it did not intend that either the Compensation Schedules or the 'Administration' portion of the act should apply.*" (187 N.W. at 633). (Emphasis added).

Section 64.0105 of the present South Dakota Code is comprised of former sections 9437, 9438, 9452 and 9453, all of which were included in the original "part one" of the Act. Former sections 9439, 9451 and 9482 comprise section 64.0106

of the current Code. The first two of these sections were also found in the original "part one" of the Act, and the last was included under the "Insurance" subheading. The present sections appear in Chapter 64.01, which is now entitled "Scope and Effect of Law".

Section 64.0506 was a new section in the 1939 South Dakota Code. However, it is significant that it appears in Chapter 64.05, entitled "Administration of Law", and all but one of the other sections in that chapter originally appeared in the "Administration" subchapter of the 1919 Code.

If we apply the reasoning and statutory interpretation of Richardson to the current section numbers, it may reasonably be inferred that the legislature intended that in determining whether an employer is insured under the Act, sections 64.0105 and 64.0106 are applicable, but section 64.0506 is not.

A number of subsequent South Dakota cases have followed Richardson in holding that the failure of the employer to procure insurance was an election not to be bound by the Workmen's Compensation Act. See Maise v. Delaney, S.D. 1965, 134 N.W.2d 770, and cases there cited. In that case the court pointed out that the last paragraph in section 64.0106 (quoted supra) simply "clarified" and "restated the tenor" of the prior decisions.

While sections 64.0105 and 64.0106 have been construed by the Supreme Court of South Dakota in many cases, we do not find that any of those cases or any others have considered the effect of section 64.0506 requiring the insurer to file a certificate of insurance.[6] In those cases holding that the act was not applicable, the decisions were not premised upon a failure to file the insurance certificate, but rather upon the failure to "carry" or "provide" insurance.

It is significant also that when section 64.0506 was enacted in 1939 the legisla-

---

**6.** At least two cases, Maise v. Delaney, supra, and Utah Idaho Sugar Co. v. Temmey, 1942, 68 S.D. 623, 5 N.W.2d 486, were decided subsequent to the enactment of section 64.0506 in 1939.

ture did not provide that the *employer* should file a certificate of insurance (as do the acts of many states, including Montana discussed infra), but rather that the certificate should be filed by the insurer. It would be manifestly unjust to prejudice the rights of the employer and employee under the Workmen's Compensation Act because of the failure of the insurer to comply with the filing requirement. This would not be in keeping with the intent of workmen's compensation acts generally. It could result in the compensation carrier collecting an insurance premium without in fact assuming its obligations under the insurance contract.

Even in states where the employer has the responsibility of giving notice of insurance coverage and filing the insurance policy, the requirement has been held directory and not mandatory. R.C.M. 1921, § 2979 provided that an employer electing to be bound by the Workmen's Compensation Act under Plan Two must file with the Industrial Accident Board an acceptance of the plan and the required insurance policy.[7] In Miller v. Aetna Life Insurance Co., 1936, 101 Mont. 212, 53 P.2d 704, the court held that the statute was directory and not mandatory, that the "spirit as well as the letter" of the Workmen's Compensation Act must be considered, and that a failure of the employer through "oversight, inadvertence, or otherwise was not intended to inure to the benefit of an insurer" who had issued the policy and collected the premium therefor. This is in accord with the prevailing rule under similar statutes.[8]

Plaintiff cites two cases in support of his contention that the provisions of SDC 64.0506 are mandatory—Eaves v. Contract Trucking Co., 1951, 55 N.M. 463, 235 P.2d 530, and Keeney v. Beasman,

1936, 169 Md. 582, 182 A. 566, 103 A.L.R. 1515. It is true, as plaintiff contends, that these cases held that the mere procurement of insurance was insufficient to constitute an implied election to be bound by the Workmen's Compensation Act. These cases in my opinion represent the minority view and also involve the construction of different statutory presumptions. In both cases the applicable statutes presume that the employer elects not to be covered unless specific filing and notice requirements are met. Under SDC 64.0105 "every employer and employee shall be presumed to have accepted the provisions of this title, and shall be thereby bound * * *", except that no employer shall be deemed to have accepted the provisions "unless he has complied with the provisions of sections 64.0106 * * *".

Moreover, the holding in the Eaves case was criticized in the subsequent New Mexico case of Garrison v. Bonfield, 1953, 57 N.M. 533, 260 P.2d 718, where the court said:

"A majority, including the writer, believe the holding in the Eaves case was too strict and that the decision should have gone the other way * * *.

\* \* \* \* \* \*

"It may be well to here state the Legislature has cured our error in the Eaves case by the enactment of Ch. 87, Laws of 1953, providing that the filing by the employer of a statement he elected to be bound by the Workmen's Compensation Act, or the filing of a bond was a sufficient election by the employer to be bound by the act." (260 P.2d at 720, 721).

It is my conclusion that both the plaintiff and defendant are covered under the Workmen's Compensation Act of South Dakota and bound by its provisions.

---

7. This section (now R.C.M.1947, § 92–1002) was amended by Sec. 2, Ch. 49, L. 1961, to provide that the election must be accompanied by a certificate issued by the insurer.

8. See e. g., Yoemans v. Anheuser-Busch, 1941, 198 S.C. 65, 15 S.E.2d 833, 136 A.L.R. 894; L. E. Marks Co. v. Moore, 1933, 251 Ky. 63, 64 S.W.2d 426; City of Athens v. Cook, 269 Ala. 364, 113 So.2d 133; and cases cited by Montana court in Miller v. Aetna Life Insurance Company, supra.

█ It is well settled that if there is any applicable workmen's compensation act under which an employee may claim compensation and that act bars recovery, the bar will be applied in an employee-employer suit in the forum. This rule was well summarized in Jonathan Woodner Co. v. Mather, 1954, 93 U.S.App.D.C. 234, 210 F.2d 868, 873–874, as follows:

"Suit by an employee against his employer for damages has almost invariably been denied where some applicable workmen's compensation act existed under which the employee could have claimed compensation. * * * But the thrust of these groups of cases, taken together, is apparent: in an employee-employer suit, if some workmen's compensation act purports to bar the action, that bar will be applied in the forum.

"The rationale underlying these cases, though not articulated, seems clear. The employer has incurred the burden of providing workmen's compensation insurance. The employee has foregone his right to sue the employer for negligence. But both have also gained. The employer has gained an immunity from common law suit. The employee has gained a right to relief even where his injury did not arise through the fault of his employer. The courts clearly consider that this system of mutual give and take would be upset if the employee could sue for negligence in another jurisdiction."

█ Since plaintiff may assert a claim under the Workmen's Compensation Act of South Dakota, this action is barred, whether or not a claim might also be asserted under the Montana Act. Accordingly it is unnecessary for the purpose of ruling on defendant's motion for summary judgment to determine whether a claim will lie under the Montana Act.

It may be noted, however, that in three cases the Supreme Court of Montana has recognized extraterritorial operation of the Montana Act. In State ex rel. Loney v. Industrial Accident Board, 1930, 87 Mont. 191, 286 P. 408, the court held that it was the "intent" of the Montana Workmen's Compensation Act "to afford protection to all Montana employers and employees who comply with its provisions" and that where an employee was injured while working in Glacier National Park he should be "compensated precisely as if he were injured within the state". In State ex rel. Morgan v. Industrial Accident Board, 1956, 130 Mont. 272, 300 P.2d 954 and Biggs v. Theis, 1962, 140 Mont. 147, 369 P.2d 32, both the employer and employee were residents of Montana, the contract of employment was made in Montana, the employees were paid by checks drawn on Montana banks, and the employee was injured in Idaho. Under these circumstances the Act was given extraterritorial effect.

The instant case differs from these three cases in that the defendant is not a Montana corporation, does not have its headquarters in Montana, a Montana resident in direct charge of the work took orders from a superintendent in Casper, Wyoming, and the employees were paid with checks drawn on Oklahoma banks. On the other hand, the defendant had been engaged in business in Montana for many years and had been qualified under the Montana Workmen's Compensation Act since 1941.

There is language in the Morgan and Biggs cases which suggest that the facts that (1) the plaintiff is a resident of Montana, (2) defendant was regularly doing business in Montana, and (3) the contract of employment was made in Montana, may be sufficient to permit plaintiff to assert a claim under the Montana Act. In the Morgan case the court said in part:

" * * * See 71 C.J., Workmen's Compensation Act, pp. 304, 305, 306 (sec. 26B), and cases cited; compare 58 Am.Jur., Workmen's Compensation, pp. 599, 600 and 601, wherein it is stated: 'The statute of the state wherein the contract was made, and wherein the employer does business, has been held applicable to injuries

occurring without the state, notwithstanding the contract was for services to be performed wholly without the state, where such services are incidental to the business conducted within the state.'" (130 Mont. at 287, 300 P.2d at 963).

In Biggs v. Theis, supra, after quoting from the Morgan case, the court said in part:

"From the foregoing quoted portions of the Morgan case it is seen that we have recognized what Larson on Workmen's Compensation refers to as a 'legitimate interest'. (See 2 Larson on Workmen's Compensation Law, pp. 370 to 372.) Montana was the state wherein Biggs and his wife and children resided and is the state where the widow and children still reside. Montana is the state which will provide for the support and care should they become public charges. Montana has every interest in the claim except the situs of the accident itself." (140 Mont. at 153, 369 P.2d at 36).

There is no Montana case precisely in point. Counsel for defendant argue that it is clear from Morgan and Biggs that the parties are covered under the Montana Act. Counsel for plaintiff contends that it is clear they are not covered. I cannot agree entirely with either counsel, although I am inclined to the view that the Montana courts would permit a claim to be asserted under the Montana Act. This court, however, is not required to determine this question. It is sufficient to find that plaintiff has a claim under the South Dakota Act. By reason thereof this suit is barred. In the light of this conclusion, the parties may be able to agree under which Act claim should be asserted by plaintiff and recognized by the defendant and his insurer.

The motion for summary judgment is granted. Pursuant to Rule 11(b) of the local rules of court defendant will prepare, serve and lodge form of judgment consistent with this opinion.

Done and dated this 6th day of October, 1966.